IN THE CIRCUIT COURT OF THE STATE OF OREGON

FOR THE COUNTY OF LANE

| | |
|---|---|
| Kang Immortus | Case No. 25CV21121 |
| Plaintiff, | **SUMMONS** |
| | **IN A CIVIL ACTION** |
| v. | |
| NISSAN NORTH AMERICA INC., | |
| Defendant. | |

## SUMMONS IN A CIVIL ACTION

To: Nissan North America, Inc.
    c/o Corporation Service Company
    1127 Broadway St NE, Ste 310
    Salem, OR, 97301

A lawsuit has been filed against you. You must appear and defend against the complaint filed in this case by filing a written answer or motion. A copy of the complaint is served with this summons. If you fail to respond, the plaintiff may obtain a default judgment against you for the relief demanded in the complaint.

You have 30 days from the date you are served with this summons to file your response with the court and serve a copy on the plaintiff.

If you do not respond, the court may enter a judgment against you without further notice.

Dated: April 4, 2025

Kang Immortus

2940 Crescent Ave APT 211

Eugene, OR, 97408

541-736-6984

kangtheconqueror937@gmail.com

EXHIBIT1
Page 1 of 42

FILED

2025 APR -2 PM 2: 22

CIRCUIT COURT OF OREGON
FOR LANE COUNTY

IN THE CIRCUIT COURT OF THE STATE OF OREGON

FOR THE COUNTY OF LANE

25CV21121

| | |
|---|---|
| Kang Immortus | Case No. |
| Plaintiff, | **COMPLAINT** |
| v. | (Gross Negligence, Reckless Endangerment, Retaliation) |
| LITHIA NISSAN OF EUGENE, | **Claims Not Subject to Mandatory Arbitration** |
| LITHIA MOTORS, INC., | (Jury Trial Demanded on all claims so triable) |
| NISSAN NORTH AMERICA, INC., | |
| Defendants. | PRAYER AMOUNT: $999,999.99 |
| | Amount claimed ((ORS 21.160(1)(d)).: Amount jury determines to be reasonable and in accordance with the law but not to exceed: $999,999.99 |

**INTRODUCTION**

1.

This is a civil action against Defendants Lithia Nissan of Eugene, Lithia Motors, Inc., and Nissan North America, Inc. for repeated acts of gross negligence, reckless endangerment, and unlawful retaliation in their handling of Plaintiff's 2019 Nissan Sentra, which has experienced ongoing and dangerous defects over the past 10 months.

PAGE 1 – COMPLAINT

EXHIBIT1
Page 2 of 42

2.

Despite three failed repairs to the same defective CVT, Defendants forced Plaintiff back into the unsafe vehicle and retaliated against him for raising valid safety concerns. The vehicle continues to endanger Plaintiff and his family every time it is driven.

**JURISDICTION AND VENUE**

3.

This Court has jurisdiction over this matter pursuant to ORS Chapter 646 and other applicable Oregon laws.

**PARTIES**

4.

Plaintiff Kang Immortus is a resident of Lane County, Oregon.

5.

Defendant Lithia Nissan of Eugene is a motor vehicle dealership incorporated in Oregon, with its principal business address located at 2060 Martin Luther King Jr Blvd, Eugene, OR 97401. Lithia Nissan of Eugene's registrant address is 150 N Bartlett St, Medford, OR 97501, the same address as its parent company, Lithia Motors, Inc.

6.

Defendant Lithia Motors, Inc. is a motor vehicle dealership incorporated in Oregon, with its principal business address at 150 N Bartlett St, Medford, OR 97501. Lithia Motors, Inc. is the parent company and registrant of Lithia Nissan of Eugene. Lithia Motors, Inc.'s registered agent for service is National Registered Agents, Inc., located at 780 Commercial St SE, Suite 100, Salem, OR 97301-3465.

7.

Defendant Nissan North America, Inc. ("NNA") is a Delaware corporation registered to do business in Oregon. NNA's registered agent for service is Corporation Service Company, located at 251 Little Falls Drive, Wilmington, DE 19808.

PAGE 2 – COMPLAINT

EXHIBIT1
Page 3 of 42

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

**BACKGROUND OF NEGLIGENCE**

8.

On May 9, 2024, Plaintiff brought his 2019 Nissan Sentra to Lithia Nissan of Eugene, reporting CVT slipping, stalling, and failing to accelerate while driving. Despite the severity of the issue, the service department dismissed Plaintiff's concerns, claiming no error codes were detected. They applied only a Transmission Control Module (TCM) update and returned the vehicle.

9.

For the next seven months, the transmission failure worsened. Plaintiff was repeatedly forced to drive the defective vehicle without a proper repair, while the risk to his safety increased.

10.

On December 4, 2024, Plaintiff brought the Sentra to Lithia Nissan again. This time, the service department detected a defect and issued a loaner vehicle. Despite the 2022 class action settlement Minerva Martinez v. Nissan North America, Inc. regarding widespread CVT failures, including Plaintiff's exact 2019 Nissan Sentra, Lithia Nissan of Eugene and NNA opted for an experimental CVT rebuild rather than a replacement.

11.

On December 19, 2024, Plaintiff returned the loaner and picked up his 2019 Nissan Sentra after the CVT rebuild. The next morning, he reported to Lithia Nissan that the transmission was still slipping and stalling, expressing fear for his safety and the risk of an accident. Lithia Nissan dismissed his concerns and instructed him to continue driving the defective vehicle for another week, citing 'policy.'

Hours later, while turning left at an intersection, the CVT slipped, leaving Plaintiff stranded in oncoming traffic before violently jerking into gear. He was nearly T-boned.

PAGE 3 – COMPLAINT

EXHIBIT1
Page 4 of 42

1

12..

2    Upon immediately returning the Sentra, Plaintiff informed both the service

3    advisor and Service Manager, Brockman Allen, that he had just been nearly T-boned

4    due to the failed CVT rebuild. Brockman Allen blamed policy, and stated that he would

5    look into having the CVT replaced. Despite this acknowledgment, Lithia Nissan later

6    chose to perform a third experimental repair on the same defective CVT rather than

7    replacing it. At no point did Lithia Nissan explain why the CVT rebuild failed.

8

13.

9    On February 22, 2025, Lithia Nissan informed Plaintiff that the Sentra was

10   "ready" after its third CVT repair.  Plaintiff had been in a loaner vehicle for the past two

11   months, a period during which Lithia Nissan made no objections to its use. When

12   Plaintiff expressed his continued safety concerns and warned Lithia Nissan of the

13   potential for a life-threatening accident, the service advisor told Plaintiff that Service

14   Manager Brockman Allen would reach out on Monday, February 24th to further discuss

15   these concerns. No communication was ever received.

14.

16   On February 24, 2025, Plaintiff sent a detailed email to Service Manager

17   Brockman Allen outlining his safety concerns. Plaintiff explicitly warned again that the

18   previously failed December rebuild had nearly resulted in a collision and that he could

19   not trust another experimental patch. No response was ever received.

20

**RETALIATION AND FORCIBLE REPOSSESSION**

21

22

15.

23   On March 24, 2025, Lithia Nissan of Eugene repossessed the loaner vehicle

24   despite Plaintiff receiving no response to his February 24th email to Service Manager

25   Brockman Allen, in which Plaintiff raised serious safety concerns. Defendants made no

26   further attempts to address Plaintiff's safety concerns before taking the loaner.

PAGE 4 – COMPLAINT

EXHIBIT1
Page 5 of 42

16.

After the repossession, Defendants also failed to contact Plaintiff regarding the return of his and his partner's personal belongings, which remained inside the vehicle. These items included Plaintiff's wallet and other essential possessions. Defendants' failure to take even the most basic steps to return Plaintiff's property further demonstrates their retaliatory intent and lack of good faith.

17.

After discovering the loaner had been repossessed without notice, Plaintiff immediately called the service center. During this phone call on March 24, 2025, with both General Manager Fadi Sabib and Service Manager Brockman Allen, Mr. Sabib exhibited hostility and made statements strongly suggesting retaliation against Plaintiff for expressing serious safety concerns and intending to pursue legal action. Mr. Sabib made the following remarks:

    a) "Honestly, you really pissed me off that you threatened legal action. Take the Sentra back now and never come back."

    b) When Plaintiff expressed fear of getting into an accident, Mr. Sabib replied: "That's not my problem. You can take it to another service center." He then mockingly added, "The next nearest service center is Corvallis."

    c) After Plaintiff warned that Lithia Nissan would be liable if this causes an accident, Mr. Sabib laughed and again mocked Plaintiff, stating: "Oh, I'm so scared."

18.

Prior to February 24th, 2025 Plaintiff had never faced any bans or hostility. Plaintiff always treated the service team with kindness, cooperation, and respect. Defendants' abrupt shift in treatment following Plaintiff's safety concerns and intent to pursue legal action further supports the claim of retaliation.

PAGE 5 – COMPLAINT

EXHIBIT1
Page 6 of 42

1

19.

2    On this same phone call, March 24th, 2025, Mr. Sabib further accused Plaintiff

3    of "holding the loaner hostage." Plaintiff asserted that he had never received any

4    communication following his February 24, 2025, email to Brockman Allen.

5    Brockman then claimed that a single letter had been sent demanding the return of the

6    loaner. However, the letter was undelivered due to Plaintiff not being present to sign

7    for it, and Defendants made no further attempts to contact Plaintiff through email,

8    text, or phone before repossessing the loaner.

9

20.

10    Later that day, March 24th, 2025, Plaintiff went to Lithia Nissan of Eugene to

11    return the loaner keys and pick up the Sentra. Despite the egregious treatment he had

12    received, Plaintiff remained respectful, stating to Brockman Allen, that had he

13    received proper notice, he would have returned the loaner by the specified date and

14    ensured it was thoroughly cleaned. When Plaintiff asked Brockman why the previous

15    CVT rebuild had failed and why he should trust the new patch repair, Brockman

16    dismissively responded, 'I don't know. Maybe it was low on (CVT) oil,' before

17    walking away without addressing Plaintiff's safety concerns.

18

21.

19    Defendants' actions reflect a clear act of retaliation. In response to Plaintiff's

20    intent to pursue legal action over the third experimental patch repair, Defendants

21    focused entirely on repossessing the loaner without making any effort to address

22    Plaintiff's safety concerns. After taking the loaner, they promptly banned Plaintiff,

23    forced him to drive the unsafe Sentra with no explanation as to why the patch would

24    work, and told him never to return. Defendants have since refused to answer

25    Plaintiff's emails or calls regarding the ongoing defects, further demonstrating their

26    retaliatory intent and disregard for Plaintiff's safety.

PAGE 6 – COMPLAINT

EXHIBIT1
Page 7 of 42

**Ongoing Safety Failures**

22.

Since the forced return of the Sentra on March 25, 2025, the CVT has continued to fail multiple times each day, with the most severe incidents occurring in the mornings after the vehicle has sat overnight. During these failures, the CVT frequently slips out of gear while accelerating, causing the RPMs to surge as the car loses forward momentum. After several seconds, the RPMs drop, and the vehicle violently jerks back into acceleration.

This defect is especially dangerous when turning left at intersections or crossing lanes, where precise timing with oncoming traffic is critical. On March 26, 2025, Plaintiff clearly recorded one such incident while driving with family. The CVT failed just before turning left, then violently jerked back into motion, nearly leaving the vehicle vulnerable to oncoming traffic. This video is available to the courts upon request.

23.

On Friday, March 28th, 2025, Plaintiff sent an email to Brockman Allen with the above referenced video attached. Plaintiff stressed that when his partner is in the passenger seat, her door would take the direct hit in the event of a collision during a left turn. In the email, Plaintiff pleaded with Brockman to find a way to allow him to return the Sentra and get back into a loaner vehicle before a preventable accident occurs. Despite this urgent request and clear evidence of the ongoing danger, no action was taken.

Later that same day, March 28th, 2025, Plaintiff called the Lithia Nissan of Eugene Service Center to speak directly with Brockman Allen about the imminent safety risk. Brockman answered the call but, without allowing Plaintiff to respond, immediately stated, "Hey, I'm sorry, I'm not trying to be rude, but I cannot speak with you. You will have to go through legal. I'm sorry, but I have to hang up now."

PAGE 7 – COMPLAINT

EXHIBIT1
Page 8 of 42

24.

This response demonstrates a complete disregard for Plaintiff's safety. It also indicates that Lithia Motors and its legal team are fully aware of the ongoing danger while refusing to respond in good faith. Rather than taking any steps to resolve the situation or mitigate the safety risk, they have deliberately ignored Plaintiff's repeated pleas.

Had this been any other customer, Lithia Nissan would have promptly removed the unsafe Sentra from the road and provided a loaner vehicle. Instead, they have punished and retaliated against Plaintiff for his February 24th, 2024, email, in which he asserted his right to pursue legal action over their reckless decision to conduct a third experimental repair on the same defective CVT rather than performing a full replacement.

25.

No further attempts have been made by Lithia Nissan of Eugene, Lithia Motors, or Nissan North America to return Plaintiff's calls or emails. The only communication Plaintiff has received was a public response to his Google review on March 25, 2025, from Lithia Nissan of Eugene (owner), which stated:

"It's deeply concerning to hear about your experience, and I sincerely apologize for the distress this situation has caused. Safety is paramount, and we are sorry if you felt your concerns were not addressed adequately. Our team worked diligently while following protocol to reach a positive resolution with repairs to your Nissan CVT. If you would like to discuss this matter further towards a resolution that ensures both safety and satisfaction, please feel free to reach out to Lithia Cares at lithiacares@lithia.com. Thank you."

Plaintiff promptly emailed lithiacares@lithia.com on March 26, 2025, seeking a resolution. However, as of March 31st, 2025, Plaintiff has received no response or any attempt of resolution from Lithia Nissan of Eugene, Lithia Motors, or NNA.

PAGE 8 – COMPLAINT

EXHIBIT1
Page 9 of 42

1    **BACKGROUND OF COMMUNCATION WITH NISSAN NORTH AMERICA**

2

3                                   26.

4         On January 24, 2025, Plaintiff was contacted by Jordan Scheidt, a Corporate

5    Arbitration Specialist with Nissan North America, Inc. (NNA). Plaintiff provided a detailed

6    account of the repeated CVT failures, unsafe repairs, and near-collision incidents caused by

7    the defective transmission.

8                                   27.

9         After receiving no response, Plaintiff followed up with additional emails on January

10   29, 2025, and February 3, 2025, reiterating his ongoing safety concerns. He emphasized the

11   imminent danger the defective CVT posed to himself and his family.

12                                  28.

13        On February 7, 2025, Jordan Scheidt responded, dismissing Plaintiff's concerns. She

14   failed to acknowledge the severity of the CVT defect or the life-threatening danger it posed,

15   offering no CVT replacement, buyout, or any meaningful resolution. Her refusal to act

16   further demonstrates NNA's disregard for Plaintiff's safety.

17                                  29.

18        Despite Plaintiff's detailed warnings and repeated requests for assistance, NNA

19   made no effort to investigate the safety of the vehicle, ensure that the defective CVT had

20   been properly addressed, or take any steps to prevent further harm.

21                                  30.

22        On February 24, 2025, Plaintiff sent a formal email to Brockman Allen, copying

23   Jordan Scheidt, detailing the inherent risk of another CVT patch instead of a replacement.

24   Plaintiff emphasized that all parties knew the December rebuild had nearly resulted in a

25   catastrophic accident. Despite the clear danger and Plaintiff's repeated warnings, NNA failed

26   to respond, further demonstrating their disregard for his safety.


PAGE 9 – COMPLAINT

EXHIBIT1
Page 10 of 42

31.

On March 24, 2025, during a phone call between Plaintiff, Fadi Sabib, and Brockman Allen, Fadi stated that Jordan Scheidt had forwarded all of Plaintiff's email correspondences to Lithia Nissan. This confirms that NNA was fully aware of Plaintiff's ongoing safety concerns, the repeated CVT failures, and Lithia Nissan's reckless decision to return the Sentra after multiple failed repairs.

32.

Despite this full knowledge, NNA failed to intervene. They made no effort to prevent Lithia Nissan's retaliatory conduct, including the forcible repossession of the loaner vehicle and the forced return of the defective Sentra.

33.

NNA's deliberate inaction directly contributed to Plaintiff's current situation. Plaintiff and his family are now left without a safe vehicle.

**PLAINTIFF'S FIRST CLAIM FOR RELIEF**
**(Against Defendants Lithia Nissan of Eugene and Lithia Motors, Inc.)**

**COUNT ONE**
**(Negligence and Reckless Endangerment)**

34.

Plaintiff realleges and incorporates by reference paragraphs 1 through 29 as though fully set forth herein.

35.

Defendants Lithia Nissan of Eugene and Lithia Motors, Inc. owed Plaintiff a heightened duty of care to ensure the Sentra was free from dangerous defects and safe for consumer use. As a vehicle manufacturer and authorized dealership, Defendants were responsible for performing repairs that complied with standard industry practices.

PAGE 10 – COMPLAINT

EXHIBIT1
Page 11 of 42

36.

Defendants breached this duty by repeatedly performing experimental and ineffective repairs on the defective CVT transmission instead of replacing it, despite clear evidence that the previous rebuild had failed.

37.

After being explicitly informed that the CVT rebuild failed and nearly caused Plaintiff to be involved in a collision, Lithia Nissan of Eugene proceeded with a third experimental repair with no justification or explanation.

38.

Lithia Nissan of Eugene further endangered Plaintiff by returning the Sentra after yet another failed patch repair. Despite receiving a video on March 28, 2025, clearly showing the Sentra still slipping, stalling, and jerking while driving, Defendants have offered no resolution, taken no action, and failed to respond in any way, demonstrating a blatant disregard for Plaintiff's safety.

39.

Defendants' conduct constitutes gross negligence and reckless endangerment under ORS 31.730, demonstrating a conscious disregard for Plaintiff's safety and the safety of others on the road.

40.

As a direct and foreseeable result of Defendants' negligence and reckless endangerment, Plaintiff has experienced severe emotional distress, ongoing fear for his safety, and an increased risk of physical harm.

PAGE 11 – COMPLAINT

EXHIBIT1
Page 12 of 42

1

2

## COUNT TWO

**(Retaliation in Violation of ORS § 646.607 and ORS § 646.608)**

3
41.

4        Plaintiff realleges and incorporates by reference paragraphs 1 through 36 as

5    though fully set forth herein.

6
42.

7        ORS § 646.607 prohibits unconscionable conduct in consumer transactions,

8    including retaliation against consumers for asserting their rights.

9
43.

10        ORS § 646.608 prohibits businesses from engaging in deceptive and unfair

11    trade practices.

12
44.

13        Plaintiff lawfully raised serious safety concerns and asserted his right to pursue

14    legal action regarding Defendants' repeated failure to repair the defective Sentra. In

15    response, Defendants engaged in the following retaliatory conduct:

16
45.

17        Defendants forcibly repossessed the loaner vehicle and all of Plaintiff's

18    belongings inside without Plaintiff receiving proper notice and without making any

19    effort to address Plaintiff's ongoing safety concerns.

20
46.

21        After forcing Plaintiff to take back the Sentra following the third failed

22    experimental repair, Defendants banned Plaintiff from the service center, further

23    retaliating against him for asserting his rights.

24
47.

25        Since then, Defendants have completely cut off all lines of communication

26    between Plaintiff and Lithia Nissan of Eugene.

PAGE 12 – COMPLAINT

EXHIBIT1
Page 13 of 42

48.

Defendants have ignored all of Plaintiff's pleas for a safe resolution and have since forced Plaintiff and his family to remain in possession of a dangerously defective vehicle.

49.

Defendants allowed General Manager Fadi Sabib to threaten, harass, and mock Plaintiff during a phone call on March 24, 2025, in direct response to Plaintiff's stated intent to pursue legal action.

50.

Defendants' actions were intentional, malicious, and designed to punish Plaintiff for exercising his legal rights. Their conduct was not only retaliatory but also demonstrated a clear disregard for Plaintiff's safety and well-being.

51.

As a direct and foreseeable result of Defendants' retaliatory conduct, Plaintiff has suffered severe emotional distress, humiliation, and fear for his safety.

## COUNT THREE

### (Unconscionable and Deceptive Business Practices)

52.

Plaintiff realleges and incorporates by reference paragraphs 1 through 45 as though fully set forth herein.

53.

ORS § 646.607 prohibits businesses from using unconscionable tactics during consumer transactions.

54.

ORS § 646.608 prohibits businesses from engaging in deceptive and unfair trade practices.

PAGE 13 – COMPLAINT

EXHIBIT1
Page 14 of 42

55.

Defendants misrepresented the effectiveness of their repairs and repeatedly returned the defective Sentra to Plaintiff, knowing it was unsafe. Despite the near-collision caused by the previous CVT rebuild, Defendants failed to disclose the experimental nature of their repairs or offer a proper resolution.

56.

Defendants knowingly withheld critical information from Plaintiff regarding the defective state of the Sentra. They falsely represented the vehicle as safe, disregarding Plaintiff's repeated reports of CVT failure and the severe safety risks.

57.

On March 25, 2025, Defendants further engaged in deceptive conduct by responding publicly to Plaintiff's Google review, falsely claiming a commitment to "ensuring both safety and satisfaction." Despite this public assertion, Defendants ignored Plaintiff's continued pleas for assistance and refused to acknowledge the clear evidence of the Sentra's ongoing defects, demonstrating intentional, fraudulent conduct in direct violation of Oregon's consumer protection laws and causing Plaintiff significant harm.

58.

As a direct and foreseeable result of Defendants' deceptive and unconscionable conduct, Plaintiff has suffered severe psychological trauma from multiple near-accidents and months of driving a defective vehicle. Plaintiff continues to experience emotional distress from the ongoing risk of the CVT failing while driving. Now left without a reliable vehicle, Plaintiff and his family are afraid to drive the Sentra except when absolutely necessary, while Defendants ignore their repeated pleas, calls, and emails for resolution.

PAGE 14 – COMPLAINT

EXHIBIT1
Page 15 of 42

1

**COUNT FOUR**

2

**(Punitive Damages – ORS § 31.730)**

3

59.

4

Plaintiff realleges and incorporates by reference paragraphs 1 through 53 as

5

though fully set forth herein.

6

60.

7

ORS § 31.730 permits an award of punitive damages where a defendant's

8

conduct demonstrates a reckless and outrageous indifference to a highly unreasonable

9

risk of harm, without regard for the safety of others.

10

61.

11

Defendants Lithia Nissan of Eugene and Lithia Motors, Inc. acted with malice

12

and reckless disregard for Plaintiff's safety by knowingly returning a defective and

13

dangerous vehicle after failed repairs.

14

62.

15

Defendants further demonstrated malicious intent by engaging in retaliatory

16

conduct, including the repossession of the loaner vehicle without notice, banning

17

Plaintiff from the service center, and subjecting him to verbal harassment.

18

63.

19

During the March 24, 2025, phone call, General Manager Fadi Sabib stated

20

that Plaintiff's email had caused "chaos" for his dealership and Lithia Motors' legal

21

team. This statement strongly suggests that Lithia Motors, Inc. was not only aware of

22

the retaliatory actions but directly involved in the decision-making process.

23

64.

24

Defendants' intentional and egregious conduct was designed to intimidate and

25

punish Plaintiff for asserting his legal rights while avoiding accountability for their

26

reckless actions. Plaintiff seeks punitive damages pursuant to ORS § 31.730 to punish

Defendants for their gross misconduct and deter similar conduct in the future.

PAGE 15 – COMPLAINT

EXHIBIT1
Page 16 of 42

## PLAINTIFF'S SECOND CLAIM FOR RELIEF

### (Against Defendant Nissan North America, Inc)

### COUNT ONE
### (Breach of Warranty)

65.

Plaintiff realleges and incorporates by reference paragraphs **1 through 59** as though fully set forth herein.

66.

Defendant NNA, as the manufacturer of Plaintiff's 2019 Nissan Sentra, issued an express warranty to ensure the vehicle's safety, reliability, and compliance with industry standards.

67.

In 2022, NNA extended its warranty coverage as part of the settlement of a class action lawsuit (**Minerva Martinez et al. v. Nissan North America, Inc.**) regarding widespread CVT transmission defects, including the defect affecting Plaintiff's vehicle.

68.

Under ORS § 72.3130 and the Magnuson-Moss Warranty Act (15 U.S.C. § 2301 et seq.), NNA was obligated to repair or replace the defective CVT within the warranty period.

69.

Despite multiple failed repair attempts and clear evidence that the Sentra remained defective and unsafe, NNA refused to provide a buyout, replacement, or authorize a proper CVT repair, breaching its warranty obligations.

70.

As a direct and proximate result of NNA's breach of warranty, Plaintiff has suffered financial harm, emotional distress, and the ongoing burden of owning a defective and unsafe vehicle.

PAGE 16 – COMPLAINT

EXHIBIT1
Page 17 of 42

## COUNT TWO

### (Negligence and Failure to Act in Good Faith)

71.

Plaintiff realleges and incorporates by reference paragraphs 1 through 65 as though fully set forth herein.

72.

Defendant NNA owed Plaintiff a duty of care to act in good faith and ensure that the safety concerns regarding the defective CVT were properly addressed.

73.

Despite NNA's knowledge of the Sentra's defective CVT and the dangerous safety risks it posed, NNA failed to act in good faith by refusing to authorize a replacement, buyout, or effective repair.

74.

Plaintiff provided NNA with detailed accounts of the CVT failures, including the near-collision following the December 2024 rebuild. NNA was fully aware of the vehicle's ongoing defect and Plaintiff's repeated concerns for his safety.

75.

Rather than taking appropriate action, NNA disregarded Plaintiff's safety concerns, ignored months of correspondence, and failed to provide any meaningful resolution. NNA was also fully aware that Plaintiff was forced back into the defective Sentra on March 24, 2025, following yet another failed repair.

76.

Despite Plaintiff's follow-up email to NNA on March 25, 2025, reporting the vehicle's continued failures, NNA has refused to respond or offer any assistance. This ongoing refusal to act in good faith, despite clear knowledge of the risks, constitutes gross negligence and a reckless disregard for Plaintiff's safety.

PAGE 17 – COMPLAINT

EXHIBIT1
Page 18 of 42

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

**COUNT THREE**
**(Violation of Oregon Lemon Law (ORS 646A.404)**

77.

Plaintiff realleges and incorporates by reference paragraphs 1 through 55 as though fully set forth herein.

78.

Under ORS 646A.404, Oregon's Lemon Law, a manufacturer must repair or replace a vehicle that has a substantial defect affecting its use, safety, or market value, after a reasonable number of failed repair attempts.

79.

Plaintiff's 2019 Nissan Sentra was sold as a Certified Pre-Owned (CPO) vehicle with an extended warranty from NNA. Under Oregon's Lemon Law (ORS 646A.404), Certified Pre-Owned vehicles still covered by the manufacturer's warranty are entitled to the same protections as new vehicles.

80.

In 2022, as part of the settlement of Minerva Martinez et al. v. Nissan North America, Inc., NNA extended the Sentra's CVT warranty to 84,000 miles to cover the widely acknowledged transmission defects. Plaintiff's vehicle was still within this extended warranty period at the time of the failed repairs.

81.

Despite three failed repair attempts on the defective CVT and clear evidence that the defect posed a significant safety risk, Nissan North America refused to provide a replacement or buyout, as required by law. NNA's refusal to comply with its legal obligations under Oregon's Lemon Law has caused Plaintiff significant financial harm, emotional distress, and the ongoing burden of owning a defective vehicle.

PAGE 18 – COMPLAINT

EXHIBIT1
Page 19 of 42

**PRAYER FOR RELIEF**

82.

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in Plaintiff's favor and award the following relief, jointly and severally against all Defendants:

83.

Full buyout or refund of the defective 2019 Nissan Sentra, including all related financial losses incurred by Plaintiff as a result of Defendants' failure to repair or replace the vehicle under warranty.

a)  Reimbursement of the full purchase price of the vehicle, including all taxes, fees, and interest paid to date.

b)  Reimbursement of all out-of-pocket repair deductibles and service-related expenses paid by Plaintiff.

c)  Payoff of any remaining loan balance on the vehicle to fully release Plaintiff from further financial obligation.

84.

Non-economic damages in an amount not to exceed $500,000 pursuant to ORS § 31.710, for the emotional distress, mental anguish, and psychological harm caused by Defendants' negligence, deception, and retaliatory conduct.

a)  Emotional trauma and persistent anxiety caused by being forced to operate a known defective vehicle that has repeatedly malfunctioned while driving, nearly causing multiple collisions with Plaintiff and his family inside.

b)  Emotional harm from being harassed, mocked, and banned by Defendants after raising valid safety concerns;

c)  The lasting mental burden of being left without a reliable or safe mode of transportation.

PAGE 19 – COMPLAINT

EXHIBIT1
Page 20 of 42

1

85.

2

Award of punitive damages pursuant to ORS § 31.730 against Defendants Lithia

3

Nissan of Eugene and Lithia Motors, Inc., for their willful and malicious conduct in

4

retaliating against Plaintiff after he raised legitimate safety concerns.

5

86.

6

Punitive damages are necessary to deter Defendants and others from engaging in

7

similar misconduct in the future and to reflect the seriousness of Defendants' disregard for

8

consumer safety and rights.

9

87.

10

An award of reasonable attorney's fees, expert witness fees, and court costs incurred

11

in pursuing this action, as permitted under applicable Oregon statutes including ORS §

12

646.638 and ORS § 646.641.

13

88.

14

Any and all other relief the Court deems just, equitable, and proper under the

15

circumstances.

16

**DEMAND FOR JURY TRIAL**

17

89.

18

Pursuant to Rule 38 of the Oregon Rules of Civil Procedure and any other applicable

19

law, Plaintiff hereby demands a trial by jury on all issues so triable.

20

21

Respectfully submitted,
Dated: April 2, 2025

22

Kang  Immortus

23

Plaintiff Pro Se

24

2940 Crescent Ave APT 211
Eugene, OR, 97408

25

541-736-6984

26

kangtheconqueror937@gmail.com

PAGE 20 – COMPLAINT

EXHIBIT1
Page 21 of 42

# EXHIBIT A

## Three Service Records –

## May 9, 2024 | December 4, 2024 | January 17, 2025

**These records show repeated complaints of the same CVT defect (slipping, stalling, failure to accelerate), with a different alleged "cause" and "repair" each time — highlighting the experimental nature of the three failed repairs.**

PAGE 21 – EVIDENCE

EXHIBIT1
Page 22 of 42



12/28/24, 9:21 AM                                                    myKaarma

## Multi-Point Inspection Summary
Thursday, May 09, 2024 05:15 AM
RO# 525949

NISSAN **Lithia Nissan of Eugene**

| CUSTOMER INFORMATION | CAR INFORMATION | SERVICE ADVISOR INFO |
|---|---|---|
| Kang Immortus | Nissan | Gio Salazar |
| NONE@LITHIA.COM | 2019 Sentra | (541) 658-3577 |
| +15417366984, +15413571903, | 3N1AB7AP3KL628629 | TECHNICIAN |
| +15417366984, +15417366984, | Mileage: 60480 | Steve Pollard |
| +15413571903 | Tag # T5126 | |

### ORIGINAL CUSTOMER REQUESTS
RECOMMENDATIONS

customer states when they light the gas padel it
and starts slowing down and makes sounds,
RPMS FLACTUATE, VEHICLE GOES INTO LIMP
MODE PLS ADVISE

CHECKED FOR DTCS NONE. CHECKED FOR TCM SOFTWARE
UPDATES AND UPDATED SOFTWARE AS NEEDED TO SET
DTCS. TEST DROVE AFTER PROGRAMMING. HAD NO ISSUES
AFTER FIRST TEST DRIVE. TEST DROVE AGAIN AFTER LUNCH
AND HAD NO ISSUES. RETURNED AND CHECKED DTCS AND
BRAKE SWITCH ADJUSTMENT. NO DTCS STORED AFTER TWO
TEST DRIVES. VERIFIED BRAKE SWITCH ADJUSTED
PROPERLY. TAILLAMPS APPEAR TO HAVE NO MOISTURE
INSIDE. OK AT THIS TIME.

| | | |
|---|---|---|
| Original Approved: | $0.00 |
| Total Approved: | $0.00 |
| Repair Estimate: | $277.50 |

### OTHER

| | | |
|---|---|---|
| 🚗 LABOR TO PERFORM REPAIRS | Original Approved: | $0.00 |
| | Total Approved: | $0.00 |
| 🚗 PERFORM COURTESY VEHICLE INSPECTION. INCLUDES: VISUAL INSPECTION OF VEHICLE, TIRES, AND SET TIRE PRESSURE TO SPEC'S. | Original Approved: | $0.00 |
| | Total Approved: | $0.00 |
| 🚗 customer states the vehicle hesitating and driving weird | Original Approved: | $0.00 |
| | Total Approved: | $0.00 |
| 🚗 GREEN REPAIR ORDER PROCESSING AND STORAGE FEE | Original Approved: | $0.00 |
| | Total Approved: | $0.00 |

PAGE 22 – EVIDENCE

EXHIBIT1
Page 23 of 42



INVOICE

**KANG IMMORTUS**
2940 CRESCENT AVE
EUGENE, OR 97408-7417
Home: 541-736-6984   Bus:
Cell:   Email: email none@lithia.com home

Invoice #: **532004**
Tag #: **T5452**

Customer #:**149197**

Service Advisor: **199798 ERICK CONTRERAS**

**LITHIA**
LITHIA NISSAN OF EUGENE #60
2060 MARTIN LUTHER KING JR. BLVD.
EUGENE, OR 97401
(541) 686-2211 · (800) 888-1215
FAX: (541) 684-9138
REMIT PAYMENT TO: LITHIA MOTORS SUPPORT SERVICES
PO BOX 679811, Dallas, TX 75267-9811

| COLOR | YEAR | MAKE/MODEL | VIN | LICENSE | MILEAGE IN | MILEAGE OUT |
|---|---|---|---|---|---|---|
|  | 19 | NISSAN SENTRA | 3N1AB7AP3KL628629 |  | 67918 | 67918 |

| DEL DATE | PROD. DATE | WARR:EXP | PROMISED | P.O.NO. | RATE | PAYMENT | INV: DATE | R.O. OPENED | READY |
|---|---|---|---|---|---|---|---|---|---|
| 01JAN24 |  |  | 18:00 04DEC24 |  | 0.00 | CASH | 14DEC24 | 08:23 04DEC24 | 14:30 14DEC24 |

OPTIONS: ENG:1.8 Liter

| LINE | OPCODE | TECH | TYPE | HOURS | LIST | NET | TOTAL |
|---|---|---|---|---|---|---|---|

A RPMS SPIKE AND VEHICLE DOESNT ACCELERATE LURCHES FORWARD EVENTUALLY
  PLEASE CHECK AND ADVISE
CAUSE: 20035 TSB
  JD01AA R&I AUTOMATIC CVT TRANSAXLE ASSY *
    188794  WN4                                              (N/C)
  JD023A COMBINATION: RPL AUTOMATIC CVT TRANSAXLE
    ASSY
    188794  WN4                                              (N/C)
  1 3170E-X427D VALVE ASSY KIT-CONTROL                       (N/C)
  1 31214-3JX9B FK-K2 KIT-PULLEY                             (N/C)
  FRT INV DW5218
  1 SH SHIPPING & HANDLING                                  (N/C)
  1 31340-X429E KIT-OIL PUMP                                 (N/C)
  12 999MP-CV0NS3 NS-3 CVT FLUID - 1QT X 12                  (N/C)
  2 24225-79900 CLIP                                         (N/C)
  1 16175-JA00A GASKET-ADAPTER                               (N/C)
  1 14035-3RC1A GASKET-MANIFOLD TO CYLINDER HEAD             (N/C)
  2 40073-0L700 PIN-COTTER                                   (N/C)
  2 40262-1CA0A NUT-LOCK,FRONT WHEEL BEARING                 (N/C)
  2 40057-1CA0A WASHER                                       (N/C)
  2 01225-N2011 NUT                                          (N/C)
  2 01223-00231 NUT                                          (N/C)
  2 16439-7S01E CLAMP                                        (N/C)
  1 31084-3Z000 SEAL-O RING                                  (N/C)
  1 08915-2401A WASHER - SPRING                              (N/C)
  1 08911-2401A NUT                                          (N/C)
  1 11026-JA00A WASHER DRAIN                                 (N/C)
  1 NPN 008                                                  (N/C)
A JX56AA
    188794  WN4                                              (N/C)
  JX45AA REPLACE SENTRA/VERSA SUB ASSEMBLY
    188794  WN4                                              (N/C)
  JE99AA REPROGRAM A/T CONTROL UNIT
    188794  WN4                                              (N/C)

**ASSURED SERVICE**
**RIGHT NOW SERVICE**
QUALITY SERVICE WHEN YOU NEED IT,
THE WAY YOU WANT IT.

**UP FRONT PRICING**
THE PRICE YOU'RE QUOTED IS THE
PRICE YOU'LL PAY... PERIOD

**3 YEAR/50K MILE**
**REPAIR WARRANTY**
IF IT BREAKS, WE FIX IT... FREE

**WE SELL TIRES**
WITH EVERY TIRE PURCHASE
YOU RECEIVE:
▪ FREE TIRE REPLACEMENT
▪ FREE TIRE ROTATION
▪ FREE FLAT REPAIRS

**HOW'S OUR**
**DRIVING ?**

**LITHIA**Cares.com
**[877] 879-7581**

Final price includes .4% corp activity tax imposed on dealer.
"I acknowledge notice and oral approval of an increase in the original estimated price.
Signature or initials"

**STATEMENT OF DISCLAIMER AND ARBITRATION AGREEMENT**
In the course of servicing, GB equivalent parts may be used. The
Seller hereby expressly disclaims all warranties either express or implied, including any implied warranty
of merchantability or fitness for a particular purpose. Seller neither assumes nor authorizes any other
person to assume for it any liability in connection with the sale of this merchandise. Any dispute between
customer and the dealership arising from or related to this vehicle or this transaction will be settled by
mandatory and binding arbitration pursuant to the Federal Arbitration Act 9 U.S.C. § 1 et seq. The
arbitration shall be conducted by a single arbitrator. The arbitrator may grant whatever relief the parties
may be entitled to at law or in equity.

CUSTOMER SIGNATURE

ON BEHALF OF SERVICING DEALER, I HEREBY CERTIFY THAT THE INFORMATION CONTAINED HEREON IS ACCURATE UNLESS OTHERWISE SHOWN. SERVICES DESCRIBED WERE PERFORMED AT NO CHARGE TO OWNER. THERE WAS NO INDICATION FROM THE APPEARANCE OF THE VEHICLE OR OTHERWISE, THAT ANY PART REPAIRED OR REPLACED UNDER THIS CLAIM HAD BEEN CONNECTED IN ANY WAY WITH ANY ACCIDENT, NEGLIGENCE OR MISUSE. RECORDS SUPPORTING THIS CLAIM ARE AVAILABLE FOR (1) YEAR FROM THE DATE OF PAYMENT NOTIFICATION AT THE SERVICING DEALER FOR INSPECTION BY MANUFACTURER'S REPRESENTATIVE.

| | | |
|---|---|---|
| D | LABOR AMOUNT | |
| E | PARTS AMOUNT | |
| S | GAS, OIL, LUBE | |
| C | SUBLET AMOUNT | |
| R | MISC. CHARGES | |
| I | TOTAL CHARGES | |
| P | LESS INS/DED/DIS | |
| T | SALES TAX | |
| I | PLEASE PAY | |
| O | THIS AMOUNT | |

Copyright 2014 COX Global, LLC  IMF SERVICE INVOICE - A000 - 0000000 - IMAGING

**Customer Copy**          **Page 1 of 3**          **THANK YOU!**



**LITHIA**
LITHIA NISSAN OF EUGENE #60
2060 MARTIN LUTHER KING JR. BLVD.
EUGENE, OR 97401
(541) 686-2211 · (800) 888-1215
FAX: (541) 684-9138
REMIT PAYMENT TO:LITHIA MOTORS SUPPORT SERVICES
PO BOX 670811, Dallas, TX 75267-0811

**INVOICE**

Invoice #: **533159**
Tag #: **T5292**

**KANG IMMORTUS**
2940 CRESCENT AVE
EUGENE, OR 97408-7417
Home: 541-736-6984   Bus:
Cell:

Customer #:**149197**

Email: cmail none@lithia.com home

Service Advisor: **199798 ERICK CONTRERAS**

| COLOR | YEAR | MAKE/MODEL | VIN | LICENSE | MILEAGE IN | MILEAGE OUT |
|---|---|---|---|---|---|---|
| | 19 | NISSAN SENTRA | 3N1AB7AP3KL628629 | | 67954 | 67954 |

| DEL DATE | PROD. DATE | WARR. EXP. | PROMISED | PO.NO. | RATE | PAYMENT | INV. DATE | R.O. OPENED | READY |
|---|---|---|---|---|---|---|---|---|---|
| 01JAN24 | | | 17:00 17JAN25 | | 0.00 | CASH | 31JAN25 | 07:59 17JAN25 | 07:57 31JAN25 |

OPTIONS: ENG:1.8 Liter

**ASSURED SERVICE**

**RIGHT NOW SERVICE**
QUALITY SERVICE WHEN YOU NEED IT.
THE WAY YOU WANT IT.

**UP FRONT PRICING**
THE PRICE YOU'RE QUOTED IS THE
PRICE YOU'LL PAY... PERIOD

**3 YEAR/50K MILE
REPAIR WARRANTY**
IF IT BREAKS, WE FIX IT... FREE

**WE SELL TIRES**
WITH EVERY TIRE PURCHASE
YOU RECEIVE:
■ FREE TIRE REPLACEMENT
■ FREE TIRE ROTATION
■ FREE FLAT REPAIRS

**HOW'S OUR
DRIVING ?**

**LITHIA**Cares.com
**[877] 879-7581**

Copyright 2014 EDK Corbet, LLC  EMP SERVICE INVOICE - XEIIC - DEWXID - HAIGINS

| LINE OPCODE TECH TYPE HOURS | LIST | NET | TOTAL |
|---|---|---|---|

A CUSTOMER STATES VEHICLE IS STILL HESITATING TO ACCELERATE AND RPMS
    SPIKING WHEN TRYING TO ACCELERATE
CAUSE: TRANS PAN
   JD40AA RPL OIL PAN GASKET
     188794  WN4
   1 31397-3JX0A GASKET-OIL PAN                         (N/C)
   2 999MP-CV0NS3 NS-3 CVT FLUID - 1QT X 12       (N/C)
   FC: ZR                                         (N/C)
   PART#: 31397-3JX0A
   COUNT: 1
   CLAIM TYPE: PP
   AUTH CODE:  FW

PARTS:   0.00  LABOR:    0.00  OTHER:    0.00  TOTAL LINE A:     0.00
67954 CVT PAN SEEPING LIGHTLY FROM REAR GASKET AREA
    *********************************************
B PERFORM COURTESY VEHICLE INSPECTION: INCLUDES: VISUAL INSPECTION OF
    VEHICLE, TIRES, AND SET TIRE PRESSURE TO SPEC'S.
   CVI PERFORM COURTESY VEHICLE INSPECTION
    INCLUDES: VISUAL INSPECTION OF VEHICLE,
    TIRES, AND SET TIRE PRESSURE TO SPEC'S.
    99999    INM                                  (N/C)
PARTS:   0.00  LABOR:    0.00  OTHER:    0.00  TOTAL LINE B:     0.00
    *********************************************
       YOU MAY RECEIVE A SATISFACTION SURVEY IN THE
       NEAR FUTURE! YOUR COMPLETE SATISFACTION IS
       OUR #1 GOAL!! THANKS FOR COMING TO LITHIA
       NISSAN OF EUGENE! 541-686-2211

    THANK YOU FOR YOUR TIME.

Final price includes .4% corp activity tax imposed on dealer.
"I acknowledge notice and oral approval of an increase in the original estimated price.
Signature or initials"

**STATEMENT OF DISCLAIMER AND ARBITRATION AGREEMENT**
In the course of servicing, OE equivalent parts may be used.
The factory warranty constitutes all of the warranties with respect to the sale of this conditions. The
Seller hereby expressly disclaims all warranties either express or implied, including any implied warranty
of merchantability or fitness for a particular purpose. Seller neither assumes nor authorizes any other
person to assume for it any liability in connection with the sale of this merchandise. Any dispute between
customer and the dealership arising from or related to this vehicle or this transaction will be settled by
mandatory and binding arbitration pursuant to the Federal Arbitration Act 9 U.S.C. § 1 et. seq. The
arbitration shall be conducted by a single arbitrator. This arbitrator may grant whatever relief the parties
may be entitled to at law or in equity.

CUSTOMER SIGNATURE

| | | |
|---|---|---|
| | LABOR AMOUNT | 0.00 |
| | PARTS AMOUNT | 0.00 |
| | GAS, OIL, LUBE | 0.00 |
| | SUBLET AMOUNT | 0.00 |
| | MISC. CHARGES | 0.00 |
| | TOTAL CHARGES | 0.00 |
| | LESS INS/DED/DIS | 0.00 |
| | SALES TAX | 0.00 |
| | PLEASE PAY THIS AMOUNT | 0.00 |

ON BEHALF OF SERVICING DEALER, I
HEREBY CERTIFY THAT THE INFORMATION
CONTAINED HEREON IS ACCURATE UNLESS
OTHERWISE SHOWN. SERVICES DESCRIBED
WERE PERFORMED AT NO CHARGE TO
OWNER. THERE WAS NO INDICATION FROM
THE APPEARANCE OF THE VEHICLE OR
OTHERWISE, THAT ANY PART REPAIRED OR
REPLACED UNDER THIS CLAIM HAD BEEN
CONNECTED IN ANY WAY WITH ANY
ACCIDENT, NEGLIGENCE OR MISUSE.
RECORDS SUPPORTING THIS CLAIM ARE
AVAILABLE FOR (1) YEAR FROM THE DATE
OF PAYMENT NOTIFICATION AT THE
SERVICING DEALER FOR INSPECTION BY
MANUFACTURER'S REPRESENTATIVE.

**Customer Copy**           Page  1 of 1           **THANK YOU!**

PAGE 24 – EVIDENCE

EXHIBIT1
Page 25 of 42

# EXHIBIT B

### February 24, 2025 –

### Email to Brockman Allen (CC: Jordan Scheidt, NNA)

**A detailed email in which Plaintiff expresses serious safety concerns following the third CVT repair. Plaintiff explicitly warns of a life-threatening incident from the failed rebuild and pleads for help. No response was received by Plaintiff before loaner was repossessed March 24, 2025.**

PAGE 25 – EVIDENCE

EXHIBIT1
Page 26 of 42



**Legal Notice: Formal Warning of Reckless Endangerment** ☆

me  Feb 24
to Brockmanallen, Jordan ⌄

**Brock,**

**This is your formal notice. From this moment forward, all communication regarding my 2019 Nissan Sentra and the loaner vehicle will be in writing — no exceptions. Every word, every decision, every move you make will be documented as I proceed with legal action against Nissan North America for gross negligence and reckless endangerment.**

You're ordering me to return the loaner — **and hand me back a Sentra with the same defective CVT, barely patched up again.** The last time this happened, I was nearly T-boned. The transmission slipped mid-turn, leaving me frozen in oncoming traffic until the car finally lurched forward. **I could have been seriously injured killed.**

The worst part? That same morning, I called your service advisor, reporting the CVT was still slipping and stalling after the rebuild. I explicitly said I was afraid for my safety — and was told to "hold onto it for a week," citing policy. Hours later, I was nearly in a collision.

**And now, despite everything, you're pushing me to take back this knowingly dangerous vehicle — with the same ticking time bomb CVT, patched up once again.** Why do you think you can gamble with my life over and over again? This isn't just negligence — it's reckless endangerment. Nissan North America already settled a 2022 class action lawsuit over widespread CVT failures — including my exact year and model — and yet this continues.

I've thoroughly documented every step of this with Consumer Affairs since the day after the first failed hack rebuild. For the past month, I've been corresponding directly with Jordan — Nissan's arbitration specialist, who has been fully aware of the entire situation and knows I'm in the process of filing a lawsuit against Nissan North America. I have also CCd Jordan on this email.

**If I am forced back into the Sentra after yet another hack rebuild — while I'm in the process of filing a lawsuit, after months of documented correspondence with Nissan Consumer Affairs and arbitration — and I end up in an accident where myself, my family, or other drivers are seriously injured or killed, there will be severe legal consequences for everyone involved.**

**Consider the Liability — For Yourself**

Brock, before you act, I strongly advise you to speak with Jordan and think carefully about what's at stake — for you.

• If I'm forced to return the loaner and drive the Sentra, and there's an accident — will Nissan North America take responsibility?

• Or will their legal team — the same one working with Jordan — point fingers at you, claiming it was your call?

• Will you be the one expected to testify under oath that you personally deemed the Sentra safe enough to risk my life and the lives of others?



9:56 AM  Wed Mar 26

## Consider the Liability — For Yourself

Brock, before you act, I strongly advise you to speak with Jordan and think carefully about what's at stake — for you.

- If I'm forced to return the loaner and drive the Sentra, and there's an accident — will Nissan North America take responsibility?

- Or will their legal team — the same one working with Jordan — point fingers at you, claiming it was your call?

- Will you be the one expected to testify under oath that you personally deemed the Sentra safe enough to risk my life and the lives of others?

- Are you ready to face personal legal consequences if someone is seriously injured or killed because of this?

Make no mistake: Nissan North America will protect itself first — and its legal team won't hesitate to let you take the fall.

**If anything happens — if I, my family, or anyone else gets hurt — I will make sure that every single decision, every word, and every signature is dragged into court. And I will make sure those responsible are held accountable — personally and legally. There will be no hiding behind corporate walls.**

## A Clear Pattern of Dangerous Negligence:

This isn't an isolated issue — it's a consistent pattern of reckless behavior that has put my life and others at risk.

- May 2nd, 2024 — I first brought in the Sentra for CVT slipping and stalling while driving. Despite my clear warnings about the car's dangerous behavior, your team dismissed my safety concerns, stating that since there was no error code, nothing could be done. I was sent back on the road with only a TCM update.

- May to December 2024 — For the next seven months, I was forced to drive the Sentra as the slipping and stalling worsened due to no error code.

- December 8th, 2024 — Before bringing the Sentra in for an A/V Unit replacement, I asked the service advisor to take another look at the CVT. This time, your team finally detected a defect in the transmission.

- Despite this, instead of replacing the faulty CVT, you opted for a hack rebuild — another temporary fix — even though my exact year and model was part of the 2022 class action lawsuit, Minerva Martinez v. Nissan North America, settled over widespread CVT failures.

- December 19th, 2024 — I picked up the Sentra, already uneasy about the "repair," knowing it wasn't a full replacement and that rebuilt CVTs are notorious for being unreliable. Despite my concerns, I was sent back out in a vehicle I felt was unsafe.

- December 20th, 2024 — That night before, the CVT was already slipping and stalling again. The issue persisted the next morning, so I called your service advisor, Eric, and explicitly told him I was afraid I'd get into an accident. His response? "Hold onto it for a week," citing company policy — completely ignoring the risk to my life.



9:56 AM  Wed Mar 26

**A Clear Pattern of Dangerous Negligence:**

This isn't an isolated issue — it's a consistent pattern of reckless behavior that has put my life and others at risk.

• May 2nd, 2024 — I first brought in the Sentra for CVT slipping and stalling while driving. Despite my clear warnings about the car's dangerous behavior, your team dismissed my safety concerns, stating that since there was no error code, nothing could be done. I was sent back on the road with only a TCM update.

• May to December 2024 — For the next seven months, I was forced to drive the Sentra as the slipping and stalling worsened due to no error code.

• December 8th, 2024 — Before bringing the Sentra in for an A/V Unit replacement, I asked the service advisor to take another look at the CVT. This time, your team finally detected a defect in the transmission.

• Despite this, instead of replacing the faulty CVT, you opted for a hack rebuild — another temporary fix — even though my exact year and model was part of the 2022 class action lawsuit, Minerva Martinez v. Nissan North America, settled over widespread CVT failures.

• December 19th, 2024 — I picked up the Sentra, already uneasy about the "repair," knowing it wasn't a full replacement and that rebuilt CVTs are notorious for being unreliable. Despite my concerns, I was sent back out in a vehicle I felt was unsafe.

• December 20th, 2024 — That night before, the CVT was already slipping and stalling again. The issue persisted the next morning, so I called your service advisor, Eric, and explicitly told him I was afraid I'd get into an accident. His response? "Hold onto it for a week," citing company policy — completely ignoring the risk to my life.

• Hours later, while turning left at an intersection, the CVT slipped and stalled mid-turn, leaving me stranded in traffic. I was nearly T-boned — for at least the tenth time over the past eight months. This time, I brought the car back immediately and demanded the loaner, knowing I was no longer safe in the Sentra.

• February 22nd, 2025 — After a month of correspondence with Nissan's arbitration specialist, Jordan — who is fully aware that I'm in the process of filing a lawsuit against Nissan North America and that I do not feel safe driving the Sentra — I received a call from Eric, telling me the Sentra was "ready for pickup" after yet another hack patch rebuild.

• Even with arbitration involved, and despite my clear safety concerns, Nissan has continued this pattern of negligence — pushing me to return the loaner and drive a car that has already nearly killed me with the same defective cvt rebuilt again.


**Final Notice**

This email serves as your formal notice:

• All future communication must be in writing.

• Anything you say or do from this point forward can and will be used in court.

I expect you to treat this with the seriousness it demands. This isn't a game — this is life and death. The next move is yours. Choose wisely.

# EXHIBIT C

### March 24, 2025 –

### Email to Brockman Allen and Jordan Scheidt

**This email, sent shortly after the loaner was forcibly taken, documents the retaliatory conduct by General Manager Fadi Sabib and the lack of any attempt to return Plaintiff's personal property. Neither party responded.**

PAGE 29 – EVIDENCE

EXHIBIT1
Page 30 of 42

9:56 AM  Wed Mar 26      ✦✦✦      ◀ 📶 🛜 ⊕ 82% 🔋

‹      :      🗑 ✉️ •••

Formal Notice of Imminent Legal Action – Gross Negligence, Retaliation, and Reckless Endangerment     ☆

🅚   me  Mar 24                  ☺ ↩ •••
to Brockman,allen, Jordan ⌄

Brockman,

CC: Jordan Scheidt

I am writing to formally document the events of today, March 25, 2025.

Without warning or prior communication, the loaner vehicle in my possession was forcibly taken—despite there being no response from Lithia Nissan or Nissan North America to my recent emails, and no contact from either party for over a month. I made it very clear to all parties involved that I did not feel safe taking back the Sentra after the now 3rd "repair" on the same defective CVT.

I never received the letter you claim was sent to me. Brockman, you acknowledged on the phone that it was returned as undeliverable. Despite that, no follow-up attempt was made—by phone, email, or any other means.

As a result, I was compelled to take back a Nissan Sentra that has undergone three CVT "repairs" in the last year on the same defective CVT—two rebuilds and patches that were experimental in nature and never properly explained. This is the same model year explicitly covered in the 2022 Nissan CVT class action settlement. To date, no justification has been provided for why the first rebuild failed, or why this most recent patch would be any safer.

More concerningly, during today's call, Sadi Habib, General Manager of Lithia Nissan, stated that he was "pissed off" because I had taken legal action. He confirmed that this was the reason the loaner was repossessed. He further informed me that I am permanently banned from the service center. When I explained that I might be forced to file suit if this new patch fails and causes harm, he sarcastically replied, "Oh, I'm so scared." Sadi Habib also told me that if I get into an accident now—being forced back into the Sentra—that "That is not my problem and you can take it to another Nissan service center".

This was clearly retaliatory. The loaner was taken and I was banned specifically because I pursued legal remedies.

Let me be perfectly clear: I am now back in a vehicle that nearly caused my death in December—one

✉️⁰⁹⁺                🎥

PAGE 30 – EVIDENCE

EXHIBIT1
Page 31 of 42



9:56 AM  Wed Mar 26

Let me be perfectly clear: I am now back in a vehicle that nearly caused my death in December—one whose defects are known to all parties involved. You—

• Nissan North America, Inc.

• Lithia Nissan of Eugene

• Sadi Habib, General Manager

• Brockman Allen, Service Manager

• Jordan Scheidt, Corporate Arbitration Specialist

—will be held accountable.

Accordingly, I will be filing suit in Lane County Circuit Court tomorrow, March 26, 2025, for Gross Negligence, Reckless Endangerment, and Retaliation. You may expect to be served via your respective registered agents:

Defendant: Lithia Nissan of Eugene

Registered Agent: Hutchins Eugene Nissan, Inc.

Service Address: 150 N Bartlett St, Medford, OR 97501

Defendant: Nissan North America, Inc.

Registered Agent for Service: Corporation Service Company

Service Address: 251 Little Falls Drive, Wilmington, DE 19808

This will be the last email from me. Expect all further communication to go through the courts.

Kang Immortus

← Reply    ← Reply all    → Forward    ☺

PAGE 31 – EVIDENCE

EXHIBIT1
Page 32 of 42

# EXHIBIT D

## March 25, 2025 –

## Lithia Nissan's Public Google Review Response

**Lithia Nissan of Eugene issued a public response to Plaintiff's Google review, claiming they were committed to a "resolution that ensures both safety and satisfaction." In that response, they directed Plaintiff to contact LithiaCares, acknowledging that Plaintiff remained in an unsafe vehicle. Plaintiff promptly emailed LithiaCares, but received no reply. It has now been over a week with no response, and Lithia Nissan of Eugene has completely shut down all communication with Plaintiff.**

PAGE 32 – EVIDENCE

EXHIBIT1
Page 33 of 42



**Google**    Lithia Nissan of Eugene Reviews    ✕

K
1 review

★★★★★ a week ago    NEW

My 2019 Sentra's CVT failed before 60,000 miles. Lithia Nissan of Eugene initially refused to address it beyond a TCM update, forcing me to drive a car that was slipping and stalling for months. In December 2024, they finally performed a CVT rebuild—but the very next day, the transmission slipped again, and I was nearly T-boned at an intersection.

Rather than finally replacing the CVT, they applied a second "experimental" patch to the same transmission. I made it clear I did not feel safe returning to the Sentra and was waiting for resolution—but instead, today they forcibly took the loaner and made me take back the same dangerous vehicle, after receiving no communication from anyone at Lithia for over a month.

On the phone today, the General Manager, Fadi Habib, was immediately aggressive and blew up on me. He said I "really pissed him off" by threatening legal action over my safety concerns and that because of that, I can "take the Sentra" and I'm never welcome back. When I warned him that I may be forced to sue if I'm injured in this car, Fadi laughed and replied, "Oh, I'm so scared," and said the situation was no longer his problem.
He was one of the most aggressive and hostile managers I've ever spoken with.

This has been one of the most unsafe and unprofessional experiences I've ever had with any business. The CVT issue was well-documented. My vehicle was part of the 2022 class action. And instead of offering a safe resolution or honoring my warranty, I was met with hostility, silence, and blatant retaliation. I was also in direct communication with a Nissan North America arbitration specialist for months—who completely ignored my safety concerns and allowed all of this to happen.

Avoid Lithia Nissan of Eugene—and Nissan CVTs—at all costs if you value your safety.

👍 1    ＜

  

Lithia Nissan of Eugene (Owner)
a week ago

It's deeply concerning to hear about your experience, and I sincerely apologize for the distress this situation has caused. Safety is paramount, and we are sorry if you felt your concerns were not addressed adequately. Our team worked diligently while following protocol to reach a positive resolution with repairs to your Nissan CVT. If you would like to discuss this matter further towards a resolution that ensures both safety and satisfaction, please feel free to reach out to Lithia Cares at lithiacares@lithia.com.
Thank you

PAGE 33 – EVIDENCE

EXHIBIT1
Page 34 of 42

# EXHIBIT E

## March 28, 2025 –

## Email to Brockman Allen with Video Attached

**Plaintiff submitted a video showing the Sentra's CVT slipping and stalling during a left turn with his family inside.  On March 28, 2025, Plaintiff called Lithia Nissan of Eugene Service Center to confirm that Service Manager Brockman Allen had received the video. Mr. Allen immediately responded, "Hey, I'm sorry, I'm not trying to be rude, but I cannot speak with you. You will have to go through legal. I'm sorry, but I have to hang up now," and then terminated the call. No further response has been received.**

PAGE 34 – EVIDENCE

EXHIBIT1
Page 35 of 42



## Video Proof

K <kongtheconqueror937@gmail.com>
to Brockmanallen

Fri, Mar 28, 8:50 AM (4 days ago)

Brockman,

This is a video from two days ago Wednesday March 26th that clearly shows the Sentra slipping, stalling, and jerking into gear right before we turn left.

If we had been t-boned it's my girlfriend's side that would have been hit. Please do the right thing and work out a solution. Your team has done 3 experimental "repairs" now.

Please Brockman. We are afraid for our safety. It has failed at least once every morning this week. We are avoiding highways and only driving when necessary, but this is our only car and it's only a matter of time before we get into an accident.

Thanks

One attachment • Scanned by Gmail ⓘ

IMG_1171.mp4

Reply    Forward

PAGE 35 – EVIDENCE

EXHIBIT1
Page 36 of 42

# EXHIBIT F

### January–February 2025 –

### Email Correspondence with Jordan Scheidt (NNA)

**Screenshots showing Plaintiff's attempts to engage Nissan North America, explain the dangers of the defective CVT, and seek resolution. Despite multiple emails, NNA refused to offer a buyout, CVT replacement, or any form of assistance.**

**Plaintiff also copied Jordan Scheidt, NNA's Arbitration Specialist, on additional emails sent March 24 and March 28, 2025, as previously referenced. Plaintiff has received no response to date.**

PAGE 36 – EVIDENCE

EXHIBIT1
Page 37 of 42

9:50 AM  Wed Mar 26                    ● ● ●                    ..ll 🛜 ⓐ 83% ▬

‹                                                    📥  🗑  ✉  ⋯

## CA 53121737 / 3N1AB7AP3KL628629 / Kang Immortus  Inbox                    ☆

**S**    Scheidt, Jordan (EXTERNAL)  Jan 24              ☺  ↩  ⋯
         to me ⌄

Good afternoon,

My name is Jordan and I am reaching out from Nissan, regarding your case.  I attempted to call the
number listed on your case and left a voicemail.  If you have any questions, please feel free to contact me
via email or directly at (615) 725-7550.

Sincerely,

**Jordan Scheidt**

Arbitration Specialist I

Customer Quality

Nissan Motor Co., Ltd.

Phone: +1.615.725.7550

Fax: +1.615.984.5265

_

————————————————————-

## NISSAN
GROUP OF THE AMERICAS

**Upcoming closures/vacations:**

**Office closed : January 20th, 2025**

**Out of the office: January 20th, 2025**

✉⁹⁹⁺                                                    📹

━━━━━━━━━━━━━━

PAGE 37 – EVIDENCE

EXHIBIT1
Page 38 of 42



9:50 AM  Wed Mar 26                                    83%

**Office closed : January 20th, 2025**

**Out of the office: January 20th, 2025**

K  me  Jan 24
to Jordan

Dear Jordan,

Thank you for reaching out. I prefer to keep our communications over email so that all correspondence is documented in writing.

To begin, I'd like to confirm whether Nissan has received my demand letter. The demand was sent via USPS Priority Legal Mail on January 11th, 2025. According to tracking updates, it has been available for pickup at a USPS location in Franklin, TN, since January 16th, and it will be returned if not picked up by Sunday, January 26th.

Please let me know the status at your earliest convenience.

Thank you,

Kang Immortus

...

K  me  Jan 29
to Jordan

Just checking in,

I wanted to confirm whether or not you have received my demand letter?

Thank you
...

↩ Reply     ↪ Forward     ☺

PAGE 38 – EVIDENCE

EXHIBIT1
Page 39 of 42

9:51AM  Wed Mar 26    ● ● ●    ‎ ‎ 📶 🛜 ⊛ 83% 🔋

<    ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ ‎ 📥  🗑  ✉️  ⋯

**S**   Scheidt, Jordan (EXTERNAL)  Feb 3    ‎ ‎ ‎ 🙂  ↩  ⋯
       to me ⌄

Good afternoon,

After further review of your demands, NNA would not be in the position to offer you a repurchase or replacement as your vehicle does not qualify under your state guidelines for a repurchase/replacement. Please be advised, NNA will also not be in the position to offer you any sort of settlement for your concern.

An automobile is made up of thousands of various components and parts which are made by man and assembled by man.  Our wish is that there is never a mechanical failure; however, there is no guarantee given but our word in the form of the warranty to assure that if a failure does occur, we will cover the repair.   While this is not the experience we would desire for our customer, Nissan has never failed to comply with the warranty that was given. Your vehicle has a CVT warranty extension effective until 06/20/2026 or 84,000 miles, whichever occurs first.

If any nonconformity still exists, Nissan offers to repair it upon verification that the nonconformity does actually exist, and we will also continue to honor the vehicle's manufacturer warranty.

Sincerely,

**Jordan Scheidt|** Arbitration Specialist I, Dispute Resolution Programs | Nissan Motor Co., Ltd. | Phone: +1.615.725.7550

**Upcoming closures/vacations:**

**Office closed :** January 20th, 2025

**Out of the office:** January 20th, 2025

●●●

PAGE 39 – EVIDENCE

EXHIBIT1
Page 40 of 42

# EXHIBIT G

### Video Evidence of CVT Failure –

### March 26, 2025

**This video clearly shows the Sentra's transmission slipping, stalling, and violently jerking back into gear while attempting a left turn. The vehicle is occupied by Plaintiff and family. Available to the Court upon request.**

PAGE 40 – EVIDENCE

EXHIBIT1
Page 41 of 42



# Notice of Service of Process

**null / ALL**
**Transmittal Number: 31177040**
**Date Processed: 04/09/2025**

| | |
|---|---|
| **Primary Contact:** | Sherry Robinson<br>Nissan North America, Inc.<br>One Nissan Way<br>Franklin, TN 37067-6367 |
| **Electronic copy provided to:** | Steve Sullivan<br>Catherine Reidy<br>Stephanie Brock<br>Stephanie Harrington<br>Kimberly Ross<br>Samaritan Potter<br>Courtney Smith |

| | |
|---|---|
| **Entity:** | Nissan North America, Inc.<br>Entity ID Number  4255884 |
| **Entity Served:** | Nissan North America Inc. |
| **Title of Action:** | Kang Immortus vs. Nissan North America Inc. |
| **Matter Name/ID:** | Kang Immortus vs. Nissan North America Inc. (17157602) |
| **Document(s) Type:** | Summons/Complaint |
| **Nature of Action:** | Breach of Warranty |
| **Court/Agency:** | Lane County Circuit Court, OR |
| **Case/Reference No:** | 25CV21121 |
| **Jurisdiction Served:** | Oregon |
| **Date Served on CSC:** | 04/08/2025 |
| **Answer or Appearance Due:** | 30 Days |
| **Originally Served On:** | CSC |
| **How Served:** | Personal Service |
| Sender Information: | Kang Immortus<br>541-736-6984 |

Information contained on this transmittal form is for record keeping, notification and forwarding the attached document(s). It does not constitute a legal opinion. The recipient is responsible for interpreting the documents and taking appropriate action.

**To avoid potential delay, please do not send your response to CSC**

251 Little Falls Drive, Wilmington, Delaware 19808-1674   (888) 690-2882   |   sop@cscglobal.com

EXHIBIT1
Page 42 of 42